(No. 18504.—)

THE PANTHER CREEK MINES, INC., Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ALEX UKINS, Defendant in Error.)

*Opinion filed February 20, 1929.*

JOHNSON & PEFFERLE, for plaintiff in error.

A. C. LEWIS, and JOSEPH A. LONDRIGAN, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On April 27, 1925, defendant in error, Alex Ukins, filed with the Industrial Commission his application for adjustment of his claim for compensation against plaintiff in error, the Panther Creek Mines, Inc. Hearing was had before an arbitrator on June 1, 1925. The arbitrator found that he was entitled to receive $14 a week for 6-3/7 weeks' temporary total disability, that that amount had been paid, and that there was nothing further due him. On petition of defendant in error the case was reviewed by the Industrial Commission, which, after hearing additional testimony, found that he was totally and permanently disabled, and awarded him $144 for medical services, $14 a week for 267 weeks, and a pension for life of $25 a month. On *certiorari* proceedings the circuit court of Sangamon county

set aside the decision of the commission and remanded the cause for further hearing. Another hearing was had before the commission, and it found that defendant in error was totally incapacitated from October 4, 1924, "until November 25, 1924, and starting March 3, 1925, he was again totally incapacitated until January 10, 1927," and awarded him $14 a week for that period of 104-2/7 weeks for such total disability. On *certiorari* proceedings the circuit court of Sangamon county confirmed the award, and this court allowed a writ of error.

There is a stipulation in the record that plaintiff in error and defendant in error were on October 4, 1924, the day of his injury, working under the Compensation act; that notice was given and demand was made; that his annual earnings were $1456, and that he had no children under sixteen years of age.

Defendant in error testified that while working in plaintiff in error's mine on October 4, 1924, he sprained his back by lifting a big piece of slate; that he had never had any trouble with his back before; that he was treated by Dr. Patton until he returned to work on November 26, 1924, and from that date until March 3, 1925, he worked for plaintiff in error digging coal; that on the last named date he quit work because of pain in his back and went to see Dr. Herndon, who sent him to Dr. Patton to have his tonsils removed; that Dr. Patton and Dr. Deal removed his tonsils and he was in the hospital two days; that the pain and soreness in his back were worse after he had his tonsils removed and that he was unable to work; that he could bend up and down all right but with a great deal of pain; that he had been to see Dr. Smith and Dr. Otis, who gave him some pills and had a picture taken of his back. On October 30, 1925, at the hearing before the commission on review, he testified that his back was the same as it was at the hearing before the arbitrator; that he had been treated by Drs. Smith and Otis and by a doctor in

St. Louis, who gave him medicine to rub on his back, and that since September 28 he had been in a hospital in Jacksonville under the care of Dr. Kennibrew; that he had employed the doctors of his own volition and that the company had not paid their charges or the hospital bills. On January 27, 1927, at the hearing before the commission on remandment from the circuit court, he testified that he was thirty-eight years old, married, and had no children; that he had not worked any since the former hearing; that his back was no better and no worse; that he had seen Dr. Kennibrew, Dr. Otis and Dr. Compton since the last hearing and had also received electric treatments from a doctor in St. Louis. He further stated that he had pain in his back constantly, whether he moved or did not move, and that his legs pained him when he walked. On cross-examination he stated that he dressed himself on the morning of the hearing without help, except that his wife helped him put on his overcoat. He also stated that it hurt him to talk and to eat, and admitted that he ate regularly. He said he did nothing from the time he arose in the morning until he went to bed at night except to eat his meals and sit and lie around his home, and that he did not sleep well because of pain in his back. He stated that Drs. Otis, Smith and Compton were not before the commission to testify because he did not ask them to come and testify.

Defendant in error produced no evidence before the arbitrator other than his own testimony. When the case was before the commission on review and on remandment Dr. Kennibrew testified for him, and the doctor's testimony is in substance as follows: Defendant in error came to him on September 28, 1925, for treatment. He found him suffering with a "strain of the lumbo-sacral group, one of the large nerves, a branch of the sacral there over the back, on the left side. Going along there is a big bunch of nerves, usually called the lumbar nerves—the great sacral nerve." It seemed he had an injury to the cord and it had ex-

tended into a number of the nerve branches. Witness had kept him in the hospital since September 28. "Cases of this kind" required long, continuous, persistent treatment, and that was usually ineffective because the condition was more or less permanent, and few of the cases, if any, get well. The injury and pain will abate for a while—for a few weeks or a few months—and then from physical motion the condition may return and be more or less permanent. He made a thorough examination of Ukins and found no focal infection. His tonsils had been removed and he had no pyorrhea or infection of the throat. He stated that $144 was a reasonable charge for his services and hospital services. When the case was before the commission after remandment from the circuit court he testified on December 13, 1926, that he had examined Ukins in September, 1926. He then found the lumbo-sacral cord almost torn or cut in twain between the third and fourth lumbar vertebræ, and that there was a subluxation between the vertebræ, in which they were separated on the left side, and proud flesh had grown where the separation occurred, causing him to bend a little to the right and making his condition worse than before. He gave it as his opinion that he would become paralyzed in the small of the back and that the second and third lumbar vertebræ would become so stiff that he would be unable to bend. He stated that the difficulty at the time of his examination was confined to the small of the back, but that the trouble would spread until about fifty muscles would probably be involved. If the lumbo-sacral cord had been completely severed Ukins "would be unable to locomote—that is, he could not use anything or exercise any part of that side of his body." There was no trouble in his locomotion outside of a slight incline to the right. With the exception of the partial severance of the lumbo-sacral cord and the trouble of the vertebræ and the pain in his back Ukins was perfectly healthy, but that his condition would keep him from working and using

his back like an ordinary man, and he would be able to walk around but would have pain.

Dr. R. F. Herndon testified for plaintiff in error before the arbitrator that he first examined defendant in error on October 29, 1924. He found at that time that he had a strain in the left sacro-iliac joint. He next saw him on March 5, 1925. He then had a pain in the lower part of his back, a tooth-ache and chronic tonsilitis. Witness thought his trouble was due to tonsilitis and referred him to Dr. Patton to have the tonsils removed. They were removed on March 12, 1925, and witness again examined him on May 5, at which time he complained of shifting pains about the level of the great trochanter. At that time his back and the region of the sacro-iliac joint were negative, and while there was complaint of pain about the left hip there were no objective findings. Witness stated that shifting pains are not characteristic of a strain. Irritability left over from a strain could be definitely located in one place, and in his judgment the pain complained of, if there was any, was due to a localized inflammation from an infectious process. Before the commission on review witness further testified: He had examined Ukins on October 6, 1925. He found him a well-developed Lithuanian, who located his soreness generally in his back without a localized tender point. All motions of his back were normal and were easily made, without muscle rigidity. The spine showed a normal curve and his legs measured the same. His reflexes were normal and his urine negative. The shifting of pain showed that there was not much pain. He gave it as his opinion that he had been able to work since, at the latest, May 5, 1925. He stated that nerve involvement without objective symptoms was possible, but that where there is nerve involvement of any duration or amount there are objective symptoms. Before the commission, on January 27, 1927, witness testified: He had last examined Ukins on January 10, 1927, in witness' office,

but had examined and re-examined him in the hospital. These examinations revealed nothing abnormal. He went through the normal motions and dressed and undressed himself. X-ray pictures showed nothing abnormal about the third and fourth lumbar vertebræ. There was no condition existing to show a severance or partial severance of the lumbo-sacral cord. His opinion was that he was able to work and that his back was normal. Witness was present when Dr. Patton examined Ukins, and he concurred in Dr. Patton's findings and opinion.

Dr. Patton at the hearing before the commission on remandment testified: He examined Ukins in his office on January 10, 1927. He made a general physical examination, with particular attention to a complaint of backache. He was a healthy-looking man, with a large frame, and weighed 200 pounds. He came into the office carrying, but not using, a cane. He gave no evidence of distress and dressed and undressed without aid or assistance. His back was perfectly straight. Examination showed his back to be straight, with a normal lumbar curve and no rigidity or spasm of the lumbar muscles. He complained of pain in indefinite regions but could not localize the pain. He had complete locomotion of the spine, both forward and backward, and also lateral rotation. He got on the table without assistance and rolled over on his face and back without any evidence of pain or difficulty. He complained of pain in his back when either leg was moved at the hip, knee or ankle, and whimpered and cried about the severity of the pain in his back when either great toe was flexed. A superficial touch on his back made him wince and jump away from the examiner's hand, but when his attention was directed to other portions of the body very heavy palpation in the same regions brought no evidence of pain on his facial expression and no complaint of pain. There were no objective findings of injury. The reflexes were normal. There were no sensory disturbances and no paralysis or

paresis of the muscles. The bladder acted normally. X-ray pictures showed no abnormality of the third and fourth lumbar vertebræ. A severance or partial severance of the sacral cord could be detected by testing the reflexes, the muscle response and the sensory response. These were tested and were normal. If the cord was severed on the left side it would affect the opposite side, only. Ukins complained of pain when flexing either great toe. Witness was of the opinion that he was able to do the ordinary work of a man in his position of life, although it would take him some time to get hardened because he had not worked for so long.

It is the contention of plaintiff in error that the award is not supported by the evidence. We think this contention is well sustained by the record. The commission found that the defendant in error was temporarily totally disabled from the day of his injury to November 25, 1924, and that he was again totally disabled from March 3, 1925, to January 10, 1927, and, according to Ukins' testimony, between November 25, 1924, and March 3, 1925, he was able to dig coal in his usual and ordinary way when he was not ailing. His own testimony does not necessarily indicate that he was totally incapacitated from work from March 3, 1925, to January 10, 1927. His evidence is to the effect that he was during that time able to completely dress himself, including the lacing of his shoes, except that his wife usually helped him to put on his overcoat—a courtesy which a wife many times extends to a husband in the very best of health and strength. The testimony of both Drs. Herndon and Patton also shows that he was able to completely undress and dress himself, get onto the table for examination and readily move and turn himself into any position desired. The finding of the commission should first show or find the time of the temporary total disability and make an award for that time, and then make a further finding of partial disability and the time thereof, with an allowance

for such partial disability, or an allowance for total disability beginning with March 3, 1925, if the facts warrant the same.

This court has repeatedly held that an applicant has the burden of establishing his claim to an award by evidence, and that if the finding of the commission and the award are manifestly against the weight of the evidence the award should be set aside. The finding of the commission in this case is manifestly against the weight of the evidence.

The judgment of the circuit court is reversed and the cause remanded to that court, with directions to set aside the award and remand the cause to the Industrial Commission for further hearing.

*Reversed and remanded, with directions.*